IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

PLUMBERS AND STEAMFITTERS          *
LOCAL NO. 150 PENSION FUND,        *
and JEFFERY G. RICE and            *
PATRICK H.F. SMITH, IV, as         *
representative Trustees            *
of the Pension Fund,               *
                                   *
        Plaintiffs,                *
                                   *
    v.                             *          CV 107-142
                                   *
CUSTOM MECHANICAL CSRA, LLC,       *
                                   *
        Defendant.                 *


---

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In this matter, Plaintiffs Plumbers and Steamfitters
Local No. 150 Pension Fund ("Pension Fund"), along with
Jeffery G. Rice and Patrick H.F. Smith, IV, as
representative Trustees of the Pension Fund, allege that
Defendant Custom Mechanical CSRA, LLC ("Custom Mechanical
LLC") "incurred a complete withdrawal from the Pension Fund
within the meaning of ERISA § 4203(b)(2), 29 U.S.C. §
1383(b)(2)." (Compl. ¶ 26.) This matter came before this
Court on September 21, 2009, for the purpose of a bench
trial.

Upon review of all evidence presented, arguments of counsel, and applicable law, the Court, pursuant to Federal Rule of Civil Procedure 52, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

In August of 2001, George "Bo" Herrington, Dean Durand, and Danny Key formed a partnership based in South Carolina known as Custom Mechanical ("Custom Mechanical Partnership"). At all times, each partner held a one-third ownership interest in the partnership. Herrington served as sole managing partner until Key joined the day-to-day operations around the middle of 2005. Custom Mechanical Partnership operated for profit and provided services, throughout its existence, in the construction and building industry. The partnership was located at 1028 Atomic Road North, North Augusta, South Carolina, before it moved, sometime in 2005, to 120 Revco Road, also in North Augusta, South Carolina.

On October 1, 2001, Herrington signed a collective bargaining agreement ("CBA") on behalf of Custom Mechanical Partnership with Plumbers and Steamfitters Local 150 labor union ("Local 150"). Custom Mechanical Partnership signed the CBA as an employer. The CBA covered the following types of construction and building work: plumbing,

steamfitting, pipe-welding, air conditioning, refrigeration and heating. According to the terms of the CBA, Custom Mechanical Partnership was required to make payments into the Pension Fund. The CBA was signed in Augusta, Georgia, and its territorial jurisdiction included Richmond, Burke, Jenkins, Jefferson, Lincoln, Taliaferro, Glascock, Warren, and McDuffie counties in Georgia. Under the CBA, Custom Mechanical Partnership performed work for John J. Kirlin LLC, International Paper Co., and St. Joseph Hospital at locations in and around Richmond County, Georgia.

Prior to the later dissolution of Custom Mechanical Partnership, the owners of Custom Mechanical Partnership, Dean Durand, Danny Key, and Bo Herrington, formed two new businesses: Custom Mechanical LLC, a South Carolina limited liability company and the Defendant in this action, and Custom Industrial Services CSRA, LLC ("Custom Industrial"), another South Carolina limited liability company. Custom Industrial was formed to utilize union labor in performing the same type of work performed by Custom Mechanical Partnership. Custom Mechanical LLC was also formed to do the same type of work done by Custom Mechanical Partnership, but without union labor.

On August 18, 2006, Custom Mechanical Partnership sent a letter to Rory LaFontaine, President of the Augusta Mechanical Contractors Association, Inc. ("AMCN") and

Jackie Jackson, the President of Local 150, providing notice that Custom Mechanical Partnership was withdrawing any authorization for AMCN, Inc. to bargain on its behalf in the future. The letter further stated that Custom Mechanical Partnership would no longer be bound by the CBA effective September 30, 2006, the date the express agreement expired. After this notice was sent, Custom Mechanical Partnership was dissolved. Custom Mechanical Partnership made no payments to the Pension Fund after October 1, 2006.

After Custom Mechanical Partnership's dissolution, Custom Mechanical LLC and Custom Industrial conducted business for profit in the construction and building industry. Specifically, Custom Mechanical LLC performed, at least in part, non-union work in and around Richmond County for previous clients of Custom Mechanical Partnership, including John J. Kirlin LLC,[1] International Paper Co., and St. Joseph Hospital. This work was the same type of work—building and construction work—performed by Custom Mechanical Partnership and covered under the CBA.

Custom Mechanical LLC and Custom Industrial occupied the same office space previously occupied by Custom Mechanical Partnership at 120 Revco Road, North Augusta, South Carolina. Each entity was operated independently:

---

[1] Work performed for John J. Kirlin LLC was performed at Fort Gordon Military Base, within the geographical boundaries of Richmond County.

the two companies maintained separate staff and personnel, separate accounting and banking records, and did not share equipment. Herrington was the managing member of Custom Mechanical LLC until his departure on July 19, 2007. Key was the managing member of Custom Industrial, and later also became the managing member of Custom Mechanical LLC after the departure of Herrington.

On April 18, 2007, Charles E. Elrod, counsel for the Pension Fund, sent a certified letter addressed to "Mr. Bo Herrington, Custom Mechanical" at 120 Revco Road, North Augusta, South Carolina. (Ex. 13.) In this letter, Mr. Elrod informed Herrington that Custom Mechanical had incurred a complete withdrawal from the Pension Fund and was subject to withdrawal liability under the Employee Retirement Income Security Act of 1975 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). The letter demanded payment of all withdrawal liability, which the Pension Fund had computed—using the formula set forth in Section 4211(b) of ERISA—to be $227,228.00. The Pension Fund demanded payment in the form of four equal quarterly installment payments, each in the amount of $49,433.27, plus a fifth installment in the amount of $31,707.05. The Pension Fund set forth the following schedule for payments: June 18, 2007; September

18, 2007; December 18, 2007; March 18, 2008; and June 18, 2008.

The letter informed Herrington that, in accordance with Section 4219(c)(2) of ERISA, payment of withdrawal liability to the Pension Fund was required to commence no later than 60 days after the date of the letter whether or not a request was made for review or appeal. In addition, the Pension Fund's letter stated that failure to commence payment of withdrawal liability, as required under ERISA, would grant the Pension Fund the right to require immediate payment. The letter also notified Herrington that failure to pay would be treated by the Pension Fund as a delinquency potentially resulting in the assessment of liquidated damages as well as the award of any court costs and attorneys' fees incurred in collecting such delinquency. Finally, the letter informed Herrington that Custom Mechanical had the right, within 90 days after receipt of the notice, to request review of any matter relating to the withdrawal liability and the schedule of payments, to identify any inaccuracy in the determination, and to furnish any additional relevant information to the Trustees of the Pension Fund.

On April 23, 2007, the letter was received and signed for by Barbara Holley, the receptionist at the time for both Custom Mechanical LLC and Custom Industrial. On or

6

around April 23, 2007, Danny Key brought this letter to the attention of Bo Herrington.[2]  At the time, Danny Key was serving as the managing member of Custom Industrial and held a one-third ownership interest in Custom Mechanical LLC.  He also was, at the time of dissolution, a one-third owner and managing partner of Custom Mechanical Partnership.  Herrington, at the time, was the sole managing member and a one-third owner of Custom Mechanical LLC, as well as, at the time of dissolution, a managing partner and one-third owner of Custom Mechanical Partnership.

Herrington and Key discussed the letter, and Herrington recommended to Key that he contact an attorney. Having received no response after more than sixty days after the letter's delivery, Mr. Elrod, on July 10, 2007, sent another letter addressed to "Mr. Bo Herrington, Custom Mechanical" reminding him of the contents of the previous letter received by him on or around April 23, 2007.  The new letter stated that since Custom Mechanical failed to commence payment of the quarterly installments, it was in default and the Pension Fund therefore required immediate payment of the full amount of the withdrawal liability or would pursue legal action.

---

[2] At trial, there was some dispute over the point in time at which Key became aware of the letter and its contents.  Finding that Key's testimony on this issue lacks credibility, the Court accepts Herrington's account of the letter's receipt.

It was not until sometime after receipt of this letter that Mr. Key contacted attorney Robert Ashmore. In early August of 2007, Ashmore, on behalf of Custom Mechanical Partnership,[3] drafted and sent a letter to the Pension Fund. This letter notified the Pension Fund that Custom Mechanical Partnership was prepared to make payments toward its withdrawal liability. Despite this letter, no payments or requests for arbitration have, at any time, been made by any Custom Mechanical entity—including Custom Mechanical Partnership and Custom Mechanical LLC.

On October 23, 2007, Plaintiffs filed suit against Custom Mechanical LLC and Custom Mechanical CSRA, Inc., alleging that Defendants "incurred a complete withdrawal from the Pension Fund within the meaning of ERISA § 4203(b)(2), 29 U.S.C. § 1383(b)(2)." (Compl. ¶ 26.) Defendant Custom Mechanical CSRA, Inc. has since been dismissed from this action.

## CONCLUSIONS OF LAW

### A. Statutory Framework

Plaintiffs and Defendant agree on the basic statutory framework that provides for withdrawal liability under

---

[3] There was some dispute at trial as to whom Ashmore represented. The Court gives credence to Ashmore's affidavit, which states, "For purposes of the legal advice, my client was, at all relevant times, Custom Mechanical, the unincorporated partnership." (Ex. 48.) The Court, therefore, finds that Ashmore represented Custom Mechanical Partnership.

ERISA. The MPPAA was enacted as an amendment to ERISA. See Connors v. Ryan's Coal Co., Inc., 923 F.2d 1461, 1463 (11th Cir. 1991). The MPPAA was purposed to discourage voluntary withdrawal from multiemployer pension plans by imposing mandatory liability on all withdrawing employers. Id.

Voluntary withdrawal occurs when an "employer permanently ceases to have an obligation to contribute to a plan or permanently ceases all operations covered by the plan." 29 U.S.C. § 1383(a); see also Connors, 923 F.2d at 1463. For employers involved in the building and construction industry, such as Defendant, a complete withdrawal occurs if:

> (A) An employer ceases to have an obligation to contribute under the plan, and
> (B) The employer –
>> i. Continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or
>> ii. Resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.

29 U.S.C. § 1383(b)(2).

To collect withdrawal liability under the MPPAA and ERISA, the trustees of a pension plan must promptly

determine the amount of withdrawal liability owed by a withdrawing employer, formulate a payment schedule, and notify the employer of the resulting assessment and schedule. 29 U.S.C. §§ 1382, 1399(b)(1); see also Connors, 923 F.2d at 1463.

> **B. Because the businesses, Custom Mechanical Partnership and Custom Mechanical LLC, were under common control, they are to be treated as a single employer.**

ERISA states, "[A]ll employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b)(1). "For an activity to be a trade or business . . . a[n] [entity] must engage in the activity: (1) for the primary purpose of income or profit; and (2) with continuity and regularity." Cent. States, Se. & Sw. Areas Pension Fund v. Neiman, 285 F.3d 587, 594 (7th Cir. 2002) (quoting Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson, 238 F.3d 891, 894 (7th Cir. 2001)); see also Comm'r v. Groetzinger, 480 U.S. 23, 35 (1987) (stating that in order for an entity to be "trade or business" its primary purpose must be to pursue profit and it must operate with continuity).

Here, there is no dispute that both Custom Mechanical LLC and Custom Mechanical Partnership were, for their entire existence, operated for profit with continuity and regularity. Undisputed testimony showed that Custom Mechanical Partnership and Custom Mechanical LLC were, at all times, "trades or businesses" for purposes of 29 U.S.C. § 1301(b)(1).

The Labor Department promulgates rules to determine whether a group of entities are under common control. Common control "means any group of trades or businesses which is either a parent-subsidiary group of trades or businesses under common control . . . a brother sister group of trades or businesses under common control . . . or a combined group of trades or businesses under common control." 26 C.F.R. § 1.414(c)-2. A brother sister group exists when the <u>same</u> five or fewer individuals own a controlling interest and exercise effective control over <u>each</u> entity. <u>CSMH Co., Inc. v. Carpenters Trust Fund for Northern Ca.</u>, 963 F.2d 238, 240-41 (9th Cir. 1992) (quoting 26 C.F.R. § 1.414(c)-2).

Although there was no real dispute at trial concerning the issue of "common control" after the dismissal of Defendant Custom Mechanical CSRA, Inc., the Court nevertheless finds that the Plaintiffs have proven by a

11

preponderance of the evidence that Custom Mechanical Partnership and Custom Mechanical LLC were businesses under common control which should be treated as a single employer for purposes of 29 U.S.C. § 1301(b)(1). The evidence at trial convincingly showed that Custom Mechanical Partnership and Custom Mechanical LLC were, for all applicable times, both exclusively owned and *completely* controlled by the same three people: Danny Key, Dean Durand, and Bo Herrington. At the outset and at all times pertinent to deciding the matters at issue in this case, each of these individuals held a one-third interest in both the partnership and the limited liability company.[4] Furthermore, Bo Herrington was the managing member of Custom Mechanical LLC until Danny Key took over that role upon Herrington's departure on July 19, 2007. In addition, Key and Herrington served as managing partners of Custom Mechanical Partnership. These facts fully support the conclusion that Custom Mechanical Partnership and Custom Mechanical LLC were under common control.

> ### C. Custom Mechanical LLC incurred a complete withdrawal under 29 U.S.C. § 1383(b)(2) because it continued to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required.

---

[4] In October of 2008, Herrington declared bankruptcy and has since lost all interest in any of his assets.

12

The Court finds that Custom Mechanical LLC "continued to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required." 29 U.S.C. § 1383(b)(2). Custom Mechanical LLC was created to perform, and did perform, building and construction work; specifically, it performed work covered by the CBA entered into by the commonly controlled Custom Mechanical Partnership. Custom Mechanical LLC performed this work in and around Richmond County, a county designated to be within the territorial jurisdiction of the CBA.

Undisputed testimony established that Custom Mechanical LLC performed work for John J. Kirlin LLC, International Paper Co., and St. Joseph Hospital, in and around Richmond County. The work performed for these clients—former clients of Custom Mechanical Partnership—was the same type of work performed by Custom Mechanical Partnership and covered under the CBA.

D. **Custom Mechanical Partnership and Custom Mechanical LLC, as businesses under common control, are to be treated as a single employer and are to be held jointly and severally liable for any withdrawal liability.**

The United States Court of Appeals for the Eleventh Circuit has stated, in the partnership context, "It is well settled that the MPPAA contemplates recovery of withdrawal

liability from partners and partnerships under common control with defaulting signatory employers." Connors, 923 F.2d at 1466. The court has also stated, in reference to allegations against corporate defendants alleged to be under common control, "[a]ll members of a group of trades or businesses under common control of the signatory employer are responsible for withdrawal liability assessed by a plan." Id. at 1464 n.20. The case cited to support this proposition was one in which the United States Court of Appeals for the Third Circuit encountered facts similar to those in the instant case; the Third Circuit held that a corporation and employer were members of a controlled group and, therefore, the corporation was liable for the corporate employer's delinquent payments to a pension fund. IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118, 129-30 (3rd Cir. 1986). Because Custom Mechanical Partnership and Custom Mechanical LLC are "trades or businesses . . . under common control," they are treated as a single employer and are jointly and severally liable for the withdrawal liability. 29 U.S.C. § 1301(b)(1).

### E. Custom Mechanical LLC received sufficient notice of the withdrawal liability.

To collect withdrawal liability under the MPPAA and ERISA, the trustees are required to give statutory notice:

> (1) As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall—
> a. notify the employer of—
>   i. the amount of the liability, and
>   ii. the schedule for liability payments, and
> b. demand payment in accordance with the schedule.

29 U.S.C. § 1399(b)(1); see also 29 U.S.C. § 1382.

On April 18, 2007, the Pension Fund sent a letter addressing each of the provisions set forth above. This letter was received and read by Herrington and Key on or around April 23, 2007. In the letter, the Pension Fund identified the amount of withdrawal liability owed, demanded payment, and set forth a schedule of liability payments. The Pension Fund even went beyond the statutory notice requirements and informed Custom Mechanical of its right to, within 90 days, request a review of any matter relating to the determination of the withdrawal liability, its right to identify any inaccuracy in the determination of the amount stated, and its right to furnish any additional relevant information to the Trustees.

While there was no dispute at trial over the sufficiency of the content of the letter, there was some

dispute over whether Defendant Custom Mechanical LLC actually received notice. "Congress passed the MPPAA as an amendment to ERISA in order to protect multi-employer pension plans from the financial burdens that result when one employer withdraws from a multi-employer plan without first funding uncovered liabilities of the plan attributable to the employer." Carriers Container Council, Inc. v. Mobile S.S. Ass'n Inc., 896 F.2d 1330, 1342 (11th Cir. 1990). Regarding the protection of pension funds, one major concern is the need to "ensure[] that no employer can use intricate corporate structures to avoid withdrawal liability." Id. In light of this concern, *inter alia*, a number of circuits have held that notice to one member of a controlled group is notice to all. See, e.g., Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Cent. Transport, Inc., 888 F.2d 1161, 1163-64 (7th Cir. 1989) (finding "notice and demand to one member of a control group is notice and demand to all in the control group"); McDonald v. Centra, Inc., 946 F.2d 1059, 1062 (4th Cir. 1991) (same); I.A.M. Nat'l Pension Fund, Plan A, A Benefits v. Slyman Indus., Inc., 901 F.2d 127, 129 (D.C. Cir. 1990) (same); IUE AFL-CIO Pension Fund, 788 F.2d at 127-28 (same); Teamsters Pension Trust Fund v.

16

_Allyn Transp. Co._, 832 F.2d 502, 506-07 (9th Cir. 1987) (same).

This policy is not only driven by the explicit language of ERISA, which "indicates that pension funds should be entitled to deal with members of a controlled group as a single entity," but also by the spirit of the MPPAA, which was designed to guard the interests of participants and beneficiaries in economically struggling multiemployer plans. _IUE AFL-CIO Pension Fund_, 788 F.2d at 127. In addition, practically speaking, pension funds can only reasonably be expected to provide notice to the entity that is the employer of its participants—funds often have no way of knowing the ownership of any other entities potentially within the same control group. _See id._ (discussing rationale behind constructive notice regarding withdrawal liability under ERISA); _see also_ Cent. States, Se. & Sw. Areas Pension Fund v. Slotky, 956 F.2d 1369, 1375 (7th Cir. 1992) ("There is nothing unreasonable about requiring the notified firm to notify the other members of the controlled group rather than requiring the pension plan to thread what may be a maze of intercorporate relations to establish the bounds of the group."). Businesses should not be permitted to "shirk[] their ERISA obligations by fractionalizing operations into many separate entities."

Connors, 923 F.2d at 1466 (quoting Allyn Transp. Co., 832 F.2d at 507).

Here, there is clear evidence that Herrington, a one-third owner of Custom Mechanical Partnership and one of its managing partners, along with Danny Key, another one-third owner and managing partner, received actual statutory notice of the partnership's withdrawal liability through the April 18, 2007 letter. Because Custom Mechanical LLC and Custom Mechanical Partnership are under common control and Custom Mechanical Partnership properly received notice, Custom Mechanical LLC, therefore, received notice of its withdrawal liability from the Fund through Mr. Elrod's April 18, 2007 letter addressed to Herrington at Custom Mechanical.

The Court also finds that Defendant received actual notice of the withdrawal liability. Despite the Defendant's very limited technical arguments, the fact remains that the statutorily required notice reached Custom Mechanical LLC, as demonstrated by Herrington's own admissions. Herrington admitted he not only read the letter on or around April 23, 2007, but also admitted that the letter was brought to his attention by Danny Key. The two read the letter, spent time discussing its contents, and Herrington advised Key to seek legal counsel. At the

18

time of the receipt of the initial notice, on or around April 23, 2007, Herrington was not only the managing member of Custom Mechanical LLC, but Herrington and Key, together, represented two-thirds of the ownership interest of Custom Mechanical LLC and one-hundred percent of the owners involved in the day-to-day activities of Custom Mechanical LLC.

Defendant argues that because the letter was addressed to "Custom Mechanical" rather than "Custom Mechanical LLC," Custom Mechanical LLC never received proper notice of the withdrawal liability. The fact that the letter was ambiguously addressed to "Custom Mechanical" fails to undercut the fact that Bo Herrington, at the time he was made aware of the letter and its contents, was the managing member of Custom Mechanical LLC. "Defendant[] cannot stick [its] head[] in the sand and later claim ignorance;" Defendant was well aware of the notice and was fully aware of its contents. See Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. El Paso CGP Co., 525 F.3d 591, 601 (7th Cir. 2008).

> F. Plaintiffs are entitled to the withdrawal liability set forth in their April 18, 2007 letter, interest on that liability, statutory damages as set forth below, and reasonable attorneys' fees and costs of the action, to be paid by Defendant.

"Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule."   29 U.S.C. § 1399(c)(2).   "If no arbitration proceeding has been initiated . . . the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor.   The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection."   29 U.S.C. § 1401. "If a payment is not made when due, interest on the payment shall accrue from the due date until the date on which the payment is made."   29 U.S.C. § 1399(c)(3).

"In any action . . . to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)."   29 U.S.C. § 1451.

> In any action . . . by a fiduciary for or on behalf of a plan to enforce section 1145 of this title [delinquent contributions] in which a judgment in favor of the plan is awarded, the court **shall** award the plan—
>
> (A)  the unpaid contributions,

20

<blockquote>

(B)  interest on the unpaid contributions,

(C)  an amount equal to the greater of—

    i.  interest on the unpaid contributions, or

    ii.  liquidated damages provided for under the plan in an amount in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E)  such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan.

</blockquote>

29 U.S.C. § 1132(g) (emphasis added).

Because neither Custom Mechanical Partnership nor Custom Mechanical LLC initiated arbitration proceedings to dispute the withdrawal liability, the withdrawal liability assessed by the Fund was due and owed according to the schedule provided by the Pension Fund. Furthermore, because Custom Mechanical LLC has failed to pay the full amount of its withdrawal liability according to the payment plan set forth by the Pension Fund, Custom Mechanical LLC has violated 29 U.S.C. §§ 1399(c)(1)(a) and 1399(c)(3). Custom Mechanical LLC has also violated 29 U.S.C. § 1399(c)(2) because it failed to begin payment of its

withdrawal liability within 60 days of the Pension Fund's notice and demand letter.

As set forth above in the statute, Custom Mechanical LLC's failure to make withdrawal liability payments is treated in the same manner as a delinquent contribution within the meaning of 29 U.S.C. § 1145. For Custom Mechanical LLC's failure to pay its withdrawal liability, pursuant to 29 U.S.C. § 1132(g)(2), Custom Mechanical LLC is liable as follows:

    a. Pursuant to 29 U.S.C. § 1132(g)(2)(A), the Pension Fund is entitled to recover from Custom Mechanical LLC all unpaid withdrawal liability payments due and owing them;

    b. Pursuant to 29 U.S.C. § 1132(g)(2)(B), the Pension Fund is entitled to recover from Custom Mechanical LLC interest on all unpaid withdrawal liability payments, which interest is determined by using the rate provided for under the Plan;

    c. Pursuant to 29 U.S.C. § 1132(g)(2)(C), the Pension Fund is entitled to recover an amount equal to the interest on the withdrawal liability payments as of the date of the entry of judgment; and

d. Pursuant to 29 U.S.C. § 1132(g)(2)(D), the Pension Fund is entitled to reasonable attorneys' fees and costs incurred in bringing this action.

## CONCLUSION

Based on the evidence adduced at trial and the conclusions set forth above, Plaintiffs Plumbers and Steamfitters Local No. 150 Pension Fund, together with Jeffery G. Rice and Patrick H.F. Smith, IV, as representative Trustees of the Pension Fund, are entitled to a judgment in their favor and against Defendant Custom Mechanical CSRA, LLC. Plaintiffs are therefore directed to file their computation of damages in accordance with this Order within twenty (20) days. Defendants will have the option to respond within ten (10) days of Plaintiffs' filing.

**ORDER ENTERED** at Augusta, Georgia, this /3ᵗʰ day of October, 2009.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA